May it please the Court, Michael Sattras on behalf of the Appellant Brian Sass. With the Court's permission, I'll reserve three minutes for rebuttal. Mr. Sass prays that this Court reverse the judgment and send it back to the District Court with directions to grant the writ of habeas corpus and to order California prison authorities to immediately release him on parole. Now, why release him on parole rather than set a parole date? Because he is way beyond any parole date that California could reasonably establish for him in accordance with its law. But the violation that you're claiming is that they failed to set a parole date. Shouldn't we — I mean, I don't want to spend much time on this, but shouldn't we simply order them to set the parole date in accordance with the State law? And if they then don't set the right date, then isn't that a separate violation? Yes. I do — I'm happy to spend as much time on the question of remedy as the Court wants, because I think it's essential to Mr. Sass's rights. But, Your Honor, you could do that, in which case I would ask that you also instruct or the District Court to maintain jurisdiction of an order that does go to California prison authorities to set a parole release date and to release him in accordance with that date. All right. Well, let's get out of the merits, then. All right. That kind of order that the Court is talking about is substantially the order that the magistrate judge recommended to the District Court on the basis that there was no evidence to support the California parole authority's determination that he presented an unreasonable risk of parole, making that decision arbitrary and capricious in violation of due process. Now, the District Court — But is that the issue, is whether there is any evidence to support the parole board's determination? That's — that's — that's the issue, yes, Your Honor. Now, what the District Court did was make as a threshold issue, accepting the fact that there was no evidence to support the parole authority's determination, determine that that did not matter because California's parole system did not grant or create a right for a prisoner that was protected by due process, so liberty interest protected by due process, so that it didn't matter. They could — they could deny parole for any reason or for no reason at all. All right. Because — you're going to save two minutes. You've got about five left. So let me say there are two issues that we have to resolve, right? One issue is whether the recent California Supreme Court case eliminated our prior law that there's a liberty interest. The second issue is, assuming you prevail on that, whether there is any evidence to support the parole board's determination, right? Correct. I would like to spend as little time as possible on the first issue, although that was a momentous decision by the District Court. It basically shuts the gates of the Federal court to any and all prisoners challenging denial of parole as fundamentally unfair. But the reason why I don't want to spend too much time on it is because it's so untenable, starting with, first of all, the fact that the United States Supreme Court — never mind this Court's decisions, but the United States Supreme Court's decisions in Nebraska and Illinois concerned statutes that were substantially the same as the unless, A, B, C, D. The statute we have here says the board shall set a parole date unless A. It's the same statutory language. All right. Well, if you think that issue is that clear, then you should use your time on the other issue. All right. And the notion that Dannenberg has come in and — and swept the rug out from the board's decisions in Biggs and McQuillian is — is specious, because all Dannenberg concerned was where you have this statute that says you shall normally set a parole date at the first parole consideration hearing, but it also says you shall — you're unable to deny parole if you present an unreasonable security risk. How do you resolve those tensions? And you've gone for three minutes, so you've got to get to your issue. Okay. There's no evidence to support the continued insistence and refusal of the parole board to set a release date for Mr. Sass. As everybody recognizes, his crime of murder is a product of his chronic and serious alcoholism. This was a drunk driving with a death with his prior DUIs that were so egregious, seven of them, that it raised or elevated his crime to murder. All of the evidence shows that he has addressed that chronic alcoholism. He vowed from his hospital bed when he learned about the death he would never drink again. He never has drunk again. He's been in treatment since 1992, when prison authorities first provided him the opportunity to get treatment for his substance abuse and alcohol abuse. By the time his hearings came around in 1999 and 2000, there was a consensus of opinion among the psychiatric and forensic evaluators that he had addressed his alcoholism problem, that he could safely be released because he had insight into his problem, wasn't in denial, had programs set up for when he was released, had tremendous family support. It's his only act of criminal violence. There's no prior criminality, no prior violence, no juvenile history concerning violence. He's programmed as much as you could have him do. And you have the counselors also saying that he presents a low risk. And all the parole authorities do are keep coming back to the offense. You committed this terrible murder, which we know is what occurred. But it's contrary, and this is what Biggs is talking about, to the whole establishment of the parole system, that you just keep going back to the offense, effectively make it a life-without-possibility-of-parole sentence, deny the prisoner any chance and hope. You see with the materials that have been most recently submitted, they all agree that Mr. Sass has done anything and everything he could possibly do to make himself suitable for parole. All he needs to do is to keep doing what he's doing. He keeps getting psychiatric evaluations that say, sure, there's always a possibility of relapse. But in this case, Mr. Sass has minimized that possibility to as much as we can ask any recovered, recovering alcoholic to do so. And yet you have the California parole authorities becoming more and more out of control in this case and generally. Now, in the year 2006, six years after they've arbitrarily and capriciously denied him parole against all the evidence, they have him denied, saying there's not even a reasonable possibility that you'll get parole for the next two years, so we don't even have to consider you for parole for two more years. He's way beyond, as I said earlier, any time that the Board would set. The California system, if you are found suitable for parole, sets up guidelines and matrices to carry out this uniformity for second-degree murder being 15 to 21 years with good conduct, four months off credit for every year you have done well. Well, he's done more than well in his 18, 19 years of confinement, two minor disciplinaries. Let's take off eight months there. He still has four years. So even if you gave him ---- Kennedy, speaking too loud on the telephone with the volume of his speech, was that it? Mr. ---- That was about 10 or 15 years ago, the two items. One, we spoke too loud. Was that it? I thought maybe you were saying I was speaking too loud. No, no. The other was a work stoppage. Work stoppage. Oh, speaking too loud, too much noise on the telephone. Right. Right. Other than that, he has a perfect record. Yes. All right. All right. You better save your 28 seconds, and we'll turn it into two minutes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Julie Garland on behalf of Respondent. The decision to release a life inmate is inherently a State process that is not entitled to any Federal due process protection unless in that rare circumstance where the State creates an entitlement by the use of the mandatory language in its statutes. In determining that question, Federal courts are bound by the State court's interpretation of its own laws. The California Supreme Court's decision last year in Dannenberg presents the opportunity to revisit whether California life inmates, in fact, do have a Federal liberty interest in parole release. To determine that, we start with what Dannenberg established. It clarified that public safety is the paramount. Have any courts since Dannenberg considered this question of whether the prior law that there was a liberty interest has been overturned? Any State courts or Federal courts? Either State or Federal. Federal courts, there have been some district courts that have considered it, and some district courts agree that Dannenberg means there's no liberty interest, and some district courts find that Dannenberg has not changed it, so. And State courts? State courts have not addressed the Federal liberty interest question, to my knowledge. They certainly are addressing Dannenberg and their decisions about whether an inmate is entitled to a uniform date, but they have not addressed whether there's a Federal liberty interest that has been changed. It also addresses any evidence question. They've applied the Federal constitutional rule. That's correct, because under State law, the California Constitution, according to Rosencrantz, has established that some evidence is required to support a parole decision. In clarifying that public safety is the paramount consideration in California, the board the Court also endorsed the board's longstanding practice of considering inmates' suitability for parole first. What also was confirmed in Dannenberg is that when determining suitability for parole, which is the issue that is before this Court and the decision that Mr. Sass challenges, the board must deny parole if it determines that the inmate's release would jeopardize public safety. In California, the Court in Dannenberg considered the presumptively mandatory language that this Court looked at in McQuillian and Biggs and found that the shall unless language is not necessarily mandatory in the parole scheme in California. In doing that, it looked at the legislative history, which originally had said, of the statute, which originally had said that the board may require it. Kennedy, it can't be mandatory in the sense that it requires you to do it in every case. It means you do it unless. There's nothing sort of startling about that. I mean, Dannenberg said, sure, when you have a unless, you have exceptions. That means it's not mandatory. It's not when you have an unless, but that was always there. That's correct to a point, but in Greenhalghs, the Court established that if there is no mandatory requirement that a board set a date or release an inmate, then there is no federally protected liberty interest in parole. Your opponent says that in Greenhalghs was also a shall, shall unless. Correct. But in Greenhalghs, the United States Supreme Court did not have the benefit of the Nebraska court's interpretation of its own statute. Had the Nebraska courts interpreted its statute the way the Dannenberg court interpreted California's statute, perhaps the Court would not have found a liberty interest in parole. It doesn't seem to me that anybody's interpreted any statutes any differently than they always were. They've always been shall. You've got to do it. It's mandatory unless. And nobody ever thought you had to always do it. What's changed? Well, what's changed is that the suitability determination comes first. That was not necessarily clear prior. Right. The only issue is suitability. Right. And there are no mandatory requirements in the penal code that say the board must release an inmate once it finds certain criteria have been met. Instead the chairman of the suitable once it finds they've been met and that in order to find whether they've been met, you do it unless X, Y, Z. But the shall unless language is not incorporated in that suitability determination. Instead, as the California Supreme Court noted in Dannenberg, the suitability determination is based on the regulations, which instead of requiring the board to set a date, actually requires the board to deny a date unless it finds the date that the inmate doesn't pose a risk to society. And the board's regulations are discretionary. There's nothing in the language of the regulations which require the board to make a checklist of objective criteria and then release that inmate once they find that criteria. Instead, they're directed to deny parole if in their judgment he remains a risk to society. Aren't the California courts still saying that you are required to grant parole by these regulations? The board is required to consider the regulatory circumstances. But that isn't what Greenholz and Allen found is determinative as far as the liberty interest. There's no question the board has regulations that guide their discretion. No, I don't want to take too much of your time because you're down to four minutes, too. You probably want to discuss whether there's some evidence that justifies the board's decision. Well, actually, I'd first like to discuss whether that is the proper standard. I got that from you. I thought you said the California courts have said it's some evidence and that that's really just what the Federal standard is. Was there any evidence? Well, in California, the courts have decided under the California Constitution that a parole decision is subject to review for some evidence. But in Federal habeas, the question is not what California provides. The question is whether the State court's rejection of the due process claim is contrary to or an unreasonable application of United States Supreme Court authority. You're talking about the AEDPA. Right. Okay. But the basic question that we have to get to whether it's an unreasonable determination, all of that, is first whether there's a constitutional violation. And the constitutional violation is, I think, based on the same standard as the California standard, whether there's some evidence. Actually, the first question is whether there's liberty interest even in titling. Right. That one we're through with. We're down to two minutes and 55 seconds. That issue we're through with. So let's assume there's a liberty interest, so we can get to the next issue. The second issue, is there a constitutional violation? And the third, is it an unreasonable application of the standard or contrary to law or all of that stuff? Okay. So the first is, if there's no constitutional violation, we don't have to decide anything else, right? Well, but in determining whether there's a constitutional violation, the Court has to look at the United States Supreme Court clearly established law. We're saying some evidence isn't the proper test under clearly established Supreme Court law. The Court in Greenhalgh's law. Let's just assume that it's a two-step process, and you first say, is there a constitutional violation? And then, was it unreasonable for the California courts to reach that conclusion that it's not? Was it an unreasonable application of the some-evidence test? So let's break it up into two just so it's easier to think about. So assuming that the some-evidence test is actually clearly established Supreme Court authority, was there some evidence? The State courts in this case rejected Mr. Sass's due process claims, because, again, I would say that it is not contrary to U.S. Supreme Court authority, because that doesn't require some evidence. If it did, that would not the State courts' rejection of his claims would not be contrary to U.S. Supreme Court authority under the some-evidence standard. That is if any evidence at all exists. It can be meager. In this case, it's not meager. Mr. Sass didn't have one, didn't have two, didn't have three prior DUIs. He had seven. He rejected them. Scalia, does that mean that he will never be eligible, never be suitable for parole? What it means is, in the California parole scheme, prior criminal offenses and the crime itself are paramount considerations for public safety. He was not deterred. I certainly can't say that whether or not the Board will find him suitable. But as far as their decision that he was unsuitable at this time, that is supported by the record. He not only did he have these prior convictions, he rejected an offer for a ride home, which it would have protected the public safety. He went out and bought a couple of six-packs and — So, assuming everything you know and that we know about his past, are you saying he will never be suitable? I am not saying that. Well, what is it that would make him suitable? That would be when the Board finds that he is no longer an unreasonable risk to society. What evidence would there have to be in the record? What evidence that he would be — There will always be, I gather in your analysis, there will always be some evidence in the record that would support a parole board decision that he is not suitable, because they'll always have had this accident in his past, his history. So you're saying that there will — from now on for the rest of his life, a parole decision — a decision to deny parole will always be constitutional. As far as a due process, under California law, I think that that is what the Court has said. He obviously would have an Eighth Amendment challenge that he could bring if his sentence became disproportionate, but that's not the allegation here. Well, I think that probably is the position. You're stating accurately that it's the past record, his past history, and the nature of the accident will always be sufficient to provide some evidence that he's not suitable for parole. It may be in California. The Court looks at it if it's more egregious than the minimum necessary. Here, although implied malice murder is — perhaps it requires less intent than some other murders, in this case it was certainly a very egregious implied malice murder because of his prior history and because of his actions of fleeing the scene and because of the actions that he could have protected public safety had not been deterred by seven prior convictions for DUI, and he still went out and killed an innocent woman and her unborn child. Thank you. Thank you. The California cases since Dannenberg have regularly recognized that there remains a due process legitimate expectation to parole. We cited one of them in our reply brief, In re Scott 133, Cal App 4th 573, that specifically cites Biggs, and there's good lessons in that case. I don't think the Court is interested particularly in the lower court decisions in Federal court on the issue, but if it is, just to correct what may have been a misimpression, that there's kind of two equal camps. The lower courts have overwhelmingly rejected Sass's reasoning, and I can provide the Court with 10 or 20 Westlaw sites to that effect if it requires or finds that of relevance. The real point is that California law, even up to and including Dannenberger, recognized the legitimate expectation that was created by their parole law. Rosencrantz said at page 653, parole applicants in this State have an expectation they will be granted parole unless the board finds in the exercise of its discretion that they are unsuitable for parole in light of the circumstances specified by statute and regulation. And Dannenberg at page 97 said, as we have explained, Section 3041 expressly instructs the board to set a parole release date unless it finds, and we know the finding, that the prisoner would pose an unreasonable risk. Dannenberg really underlines the importance of a fundamentally fair determination to that question of whether that unless applies in this case, because as Dannenberg makes very clear, that's the make-or-break determination between a prisoner's continued incarceration of a prisoner. Sotomayor, Scott is final. Scott is final, yes. Was there a petition? There was a petition for review that was denied, and I think we included that in our citation. And there are other cases that are not included. Chaputis is one that comes to mind. If the Court requires, we could we could provide that citation. But there are several cases published that have come out that recognize due process applies to the California parole decision. What's your answer to the State's argument that the egregious nature of the offense and the past history are enough to provide some evidence always that this individual is a danger to society? Well, because you cannot isolate the offense. The parole determination is based on current danger that the prisoner presently presents a risk if he were paroled. So you have to look at the entire picture. As Scott talks about, you know, the requirement of some evidence, what that translates into is some rational or reasonable basis upon which you can conclude that the prisoner presents an unreasonable risk of parole. So when you look at the facts of this case in context, with the entire profile presented by the prisoner, it would be irrational, absurd to rely on the facts of the offense and its prior DUIs because of the complete, undisputed, overwhelming You don't disagree that there are some offenses that are so egregious that they would always show that there is a present risk to society? There may be. And the statute kind of tries to delineate, outline them if they're, quote, unquote, especially heinous, atrocious, and cruel murder. What we have here is a murder that, under the Watson case, I mean, it was controversial whether driving while drunk could even constitute murder. So we don't have that here. But I think even in that case, Your Honor, where you can imagine a very serious offense that for whatever reason continues to cause the prisoner to present a current risk, presumably that's consistent with the prisoner's post-conviction history. I don't know, in that kind of hypothetical, if you have a prisoner who's been incarcerated for 40 or 50 years or however, and he spent a half a century as a model prisoner, and every psych report indicates that he wouldn't present an unreasonable risk. I mean, you do have Charlie Manson in there, potentially parolable. I would say in that case, his offenses, it may be reasonable for the board to conclude that his offenses show that he would present a risk if released. But again, that's, I don't know, you know, it's not right. I think we've taken you way past your time. I appreciate that. Thank you both very much. Very helpful arguments. And the Court will stand in recess for the day.
judges: Goodwin, Reinhardt, Hawkins